**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>HELIOGEN, INC., JULIE M. KANE, PADDY PADMANATHAN, PHYLLIS NEWHOUSE, STACEY ABRAMS, BARBARA J. BURGER, CHRISTIE OBIAYA, and ROGER A. LAZARUS,<br><br>　　　　　Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

　　　　Plaintiff, Mario Johnson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

　　　　1.　　Plaintiff brings this stockholder action against Heliogen, Inc. ("Heliogen" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

- 1 -
COMPLAINT

to merge with Zeo Energy Corp. ("Parent"), through merger vehicles Zeo Energy, Hyperion Merger Corp. ("Merger Sub I") and Hyperion Acquisition LLC ("Merger Sub II," and together with Parent and Merger Sub I, "Zeo") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a May 29, 2025, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Heliogen's securityholders will receive shares of Zeo's Class A common stock valued at approximately $10 million in the aggregate, based on a Zeo Class A common stock price of $1.5859 per share, and subject to an adjustment mechanism based on Heliogen's net cash at the closing.

3. On July 2, 2025, Zeo filed a Form F-4 attaching the Registration Statement with the SEC in support of the Proposed Transaction. Thereafter, on August 16, 2024, Zeo filed an Amended Registration Statement (together, the "Registration Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act. As detailed below, the Registration Statement omits and misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Heliogen and Zeo, provided by Heliogen management and Zeo management respectively, to the Board, and the Company's financial advisor

PEP Advisory LLC ("PEP"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by PEP, and provided to the Board and the Strategic Committee.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a citizen of Wisconsin and, at all times relevant hereto, has been a Heliogen stockholder.

8. Defendant Heliogen, together with its subsidiaries, develops and commercializes concentrated solar energy in the United States. The Company is incorporated in Delaware and has its principal place of business at 130 West Union Street, Pasadena, CA 91103. Shares of Heliogen common stock are traded on the OTC Markets under the symbol "HLGN."

9. Defendant Julie M. Kane ("Kane") has been Chairperson of the Company Board of Directors at all relevant times.

10. Defendant Paddy Padmanathan ("Padmanathan") has been a director of the Company at all relevant times.

11. Defendant Phyllis Newhouse ("Newhouse") has been a director of the Company at all relevant times.

12. Defendant Stacey Abrams ("Abrams") has been a director of the Company at all relevant times.

13. Defendant Barbara J. Burger ("Burger") has been a director of the Company at all relevant times.

14. Defendant Christie Obiaya ("Obiaya") has been a director of the Company at all relevant times. In addition, Defendant Obiaya serves as the Company's Chief Executive Officer ("CEO").

15. Defendant Roger A. Lazarus ("Lazarus") has been a director of the Company at all relevant times.

16. Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

17. Non-Party Zeo provides residential solar energy systems, other energy-efficient equipment, and related services in Florida, Texas, Arkansas, and Missouri, the United States.

18. Non-Party Merger Sub I and Merger Sub II are wholly owned subsidiaries of Zeo created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22. Heliogen, together with its subsidiaries, develops and commercializes concentrated solar energy in the United States. It offers heliostat fields, and associated control systems, solar receivers, thermal energy storage products, and heat engines. The company's solutions include carbon-free steam production, a system that produces heat or steam for use in industrial processes;

Hybrid & Tri-Brid Low-Carbon Power Generation, a hybrid approach that integrates a steam turbine generator with CSP, PV, and long-duration (thermal) energy storage to achieve low-carbon emissions for electricity production while maintaining a low-cost solution. Its tri-brid approach integrates a natural gas fired system, which is capable of delivering up to 100% firm power for mission critical operations. Additionally, the company offers Carbon-Free Steam Production, a baseline solution that produces heat or steam for use in industrial processes, eliminating carbon emissions through innovative technology.

### *The Flawed Sales Process*

23. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Zeo.

24. The Registration Statement fails to disclose the projections for Heliogen despite the Registration Statement providing that PEP reviewed, "certain non-public business and financial information regarding Heliogen's business and near-term prospects all as prepared, provided and approved for PEP Advisory's use by Heliogen's senior management."

25. The Registration Statement fails to disclose the projections for Zeo despite the Registration Statement providing that PEP reviewed, "certain non-public business and financial information regarding Zeo Energy's business and future prospects all as prepared by Zeo Energy's senior management and reviewed by, discussed with and approved for PEP Advisory's use by Heliogen's senior management."

26. The Registration Statement fails to disclose financial analyses prepared by Zeo's financial advisor, if any were prepared.

27. Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Zeo, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners; and all specific conditions under which any standstill provision contained in any confidentiality agreement entered into

between the Company and potentially interested third parties throughout the sales process, including Zeo, would fall away.

28. The Registration Statement fails to adequately disclose any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

29. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

30. On June 27, 2024, Heliogen and Zeo issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> **Espoo, New Port Richey, Fla. and Pasadena, Calif. — May 29, 2025 — Zeo Energy Corp. (Nasdaq: ZEO) ("Zeo Energy," or "Zeo"),** a leading Florida-based provider of residential solar and energy efficiency solutions, and **Heliogen, Inc. (OTCQX: HLGN) ("Heliogen")**, a provider of on-demand clean energy technology solutions, today announced they have entered into a definitive agreement and plan of merger and reorganization (the "Merger Agreement") pursuant to which Zeo will acquire all of Heliogen's outstanding equity securities in an all-stock transaction. The transaction is currently expected to close in the third quarter of 2025, subject to customary closing conditions.
>
> Following the closing of the transaction, Zeo plans to leverage Heliogen's solutions, brand, intellectual property, capital, and technical talent to establish a division focused on long-duration energy generation and storage for commercial and industrial-scale facilities, including artificial intelligence (AI) and cloud computing data centers. The transaction is expected to create a robust clean energy platform spanning residential, commercial, and utility-scale markets, supported by internal financing capabilities and domain expertise.
>
> **Management Commentary**
>
> "Heliogen brings a set of practical solutions to customers, particularly data centers, looking for longer duration energy storage with substantially lower costs than alternatives on the market," said Tim Bridgewater, CEO of Zeo Energy. "Through this acquisition, we believe that Zeo will be able to accelerate our vision of serving energy consumers across the spectrum – from residential rooftops to larger-scale industrial solar and storage applications to build an energy platform at scale."
>
> "We believe this combination offers a compelling opportunity for Heliogen stockholders through the opportunity to participate in the substantial growth potential of the combined company," added Christiana Obiaya, CEO of Heliogen.

"We believe that Zeo's proven track record and network of customers can enhance the value creation opportunities for Heliogen's solutions and technical capabilities, while enhancing liquidity for stockholders. We're proud to be joining forces to scale practical, dispatchable clean energy solutions. This transaction is the result of the Heliogen Board's comprehensive review of strategic alternatives. Our Board is unanimous in its belief that this transaction is the optimal path forward and in the best interest of our stockholders."

**Strategic Rationale**

- Expanded Market Reach: The transaction unites Zeo's existing residential solar and storage footprint with Heliogen's long-duration energy storage expertise. Heliogen's commercial and utility-scale thermal storage solutions address mission-critical power quality and energy capacity issues faced by AI and cloud computing data centers, while concurrently aiding grid stability.

- Operational Synergies: The transaction is expected to streamline costs and reduce corporate overhead, while retaining core technical and commercial talent.

- Strengthened Balance Sheet: At close, Zeo anticipates benefiting from Heliogen's incremental liquidity, supporting investments for future growth in the solar and energy storage space.

- Enhanced Financing Capabilities: Zeo's affiliated financing arm, which has provided over $44 million in clean energy tax equity financing to date, has the ability to be used for future Heliogen utility-scale and long-duration energy storage projects.

- Accelerated Growth Opportunities: The transaction seeks to position Zeo to capitalize on increasing demand for resilient, cost-effective, low-carbon energy infrastructure, supported by favorable long-term tailwinds and potential tax equity investments.

**Transaction Details and Closing Timeline**

Under the terms of the Merger Agreement, upon the closing of the transaction, Heliogen's securityholders will receive shares of Zeo's Class A common stock valued at approximately $10 million in the aggregate, based on a Zeo Class A common stock price of $1.5859 per share, and subject to an adjustment mechanism based on Heliogen's net cash at the closing.

The proposed transaction has been unanimously approved by the Board of Directors of both companies and is expected to close in the third quarter of 2025, subject to the satisfaction of customary closing conditions, including approval by

Heliogen's stockholders, as well as Heliogen having a specified minimum amount of net cash at the closing. Certain Heliogen stockholders holding approximately 23% of Heliogen's outstanding shares of common stock have entered into voting agreements, pursuant to which they have agreed, among other things, to vote all of such shares in favor of the proposed transaction. The proposed transaction will not require the approval of Zeo's stockholders under Nasdaq rules.

*Potential Conflicts of Interest*

31. The breakdown of the benefits of the deal indicates that Heliogen insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Heliogen.

32. For example, Company insiders currently own large illiquid amounts of Company Stock, Company Options, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Shares of Heliogen Common Stock | | Heliogen Options | | Heliogen RSUs | |
|---|---|---|---|---|---|---|
| | Number of Shares (#) | Value ($)[1] | Number of Underlying Shares (#) | Value ($)[1] | Number of Underlying Shares (#) | Value ($)[1] |
| ***Executive Officers*** | | | | | | |
| Christiana Obiaya, Chief Executive Officer and Director | 27,031 | 48,655.80 | 28,759 | 51,766.20 | 20,559 | 37,006.20 |
| Phelps Morris, Chief Financial Officer | 16,749 | 30,148.20 | 0 | 0 | 51,563 | 92,813.40 |
| | | | | | | |
| ***Directors*** | | | | | | |
| Julie Kane, Chairperson of the Heliogen Board of Directors | 6,124 | 11,023.20 | 0 | 0 | 2,142 | 3,855.60 |
| Stacey Abrams | 6,552 | 11,793.60 | 0 | 0 | 2,142 | 3,855.60 |
| Barbara Burger | 3,850 | 6,930.60 | 0 | 0 | 2,996 | 5,392.80 |

| | | | | | | |
|---|---:|---:|---:|---:|---:|---:|
| Roger Lazarus | 3,570 | 6,426.00 | 0 | 0 | 2,856 | 5,140.80 |
| Phyllis W. Newhouse | 33,725 | 60,705.00 | 0 | 0 | 2,142 | 3,855.60 |
| Suntharesan Padmanathan | 6,124 | 11,023.20 | 0 | 0 | 2,142 | 3,855.60 |

33. In addition, employment agreements with certain Heliogen executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff.

34. The Registration Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

35. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36. Thus, while the Proposed Transaction is not in the best interests of Heliogen, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

37. The Heliogen Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

a. Why the Company failed to provide projections for Heliogen despite the Registration Statement providing that PEP reviewed, "certain non-public business and financial information regarding Heliogen's business and near-term prospects all as prepared, provided and approved for PEP Advisory's use by Heliogen's senior management;

b. Why the Registration Statement fails to provide projections for Zeo despite the Registration Statement providing that PEP reviewed, "certain non-public business and financial information regarding Zeo Energy's business and future prospects all as prepared by Zeo Energy's senior management and reviewed by, discussed with and approved for PEP Advisory's use by Heliogen's senior management;

c. Any financial analyses prepared by Zeo's financial advisor, if any were prepared;

d. Whether the terms of any confidentiality agreements entered during the sales process between Company on the one hand, and any other third party (including Zeo), if any, differed from one another, and if so, in all specific manners;

e. All specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Zeo, would fall away; and

f. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Heliogen and Zeo Financial Projections*

39. The Registration Statement fails to provide material information concerning financial projections for Heliogen provided by Heliogen management to the Board and PEP and relied upon by PEP in its fairness opinion. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

40. Notably the Registration Statement reveals that as part of its analyses, PEP reviewed, "certain non-public business and financial information regarding Heliogen's business and near-term prospects all as prepared, provided and approved for PEP Advisory's use by Heliogen's senior management."

41. The Registration Statement also reveals that as part of its analyses, PEP reviewed, "certain non-public business and financial information regarding Zeo Energy's business and future prospects all as prepared by Zeo Energy's senior management and reviewed by, discussed with and approved for PEP Advisory's use by Heliogen's senior management."

42. The Registration Statement should have, but fails to provide, certain information in the projections that Heliogen management and Zeo management provided to the Board and PEP. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

43. With regard to *Combined Company Projections*, the Registration Statement fails to disclose material line items, including the following:

      a. Net Revenue, including the underlying inputs, metrics, and assumptions used to determine the same;

      b. Adjusted EBITDA, including the underlying inputs, metrics, and assumptions used to determine the same; and

      c. Unlevered Free Cash Flow, including the underlying inputs, metrics, and assumptions used to determine the same.

44. The Registration Statement also fails to provide a reconciliation of all Non-GAAP metrics to GAAP.

45. With regard to *Liquidation Analysis of Heliogen*, the Registration Statement fails to disclose material line items, including the following:

      a. The inputs, metrics, and assumptions used to determine the estimated total assets of approximately $35.0 million to $41.2 million;

      b. The inputs, metrics, and assumptions used to determine the estimated administrative claims of approximately $20.6 million to $24.3 million; and

      c. The inputs, metrics, and assumptions used to determine the total unsecured claims of approximately $2.9 million to $3.4 million.

46. The Registration Statement fails to provide any financial projections for Zeo even though the Registration Statement states that PEP reviewed, "certain non-public business and financial information regarding Zeo Energy's business and future prospects all as prepared by Zeo Energy's senior management."

47. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

48. Without accurate projection data for Heliogen being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the PEP's fairness opinion, or make an informed decision whether to vote in favor of the Proposed

Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by PEP*

49. In the Registration Statement, PEP describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

50. With regard to the *Heliogen Comparable Transaction Analysis*, the Registration Statement fails to disclose material line items, including the following:

    a. The specific comparable transactions analyzed;

    b. The date on which each comparable transaction closed;

    c. The aggregate value of each comparable transaction;

    d. The inputs, metrics, and assumptions used to determine the EV/ LTM Adjusted EBITDA Multiple applied to each selected transaction;

    e. The inputs, metrics, and assumptions used to determine the All Transactions 1-Day and 1-Month premiums of 25.4% and 27.0% utilized;

    f. The inputs, metrics, and assumptions used to determine the Stock-for-Stock 1-Day and 1-Month premiums of 8.9% and 10.3% utilized;

    g. The inputs, metrics, and assumptions used to determine the Below $100.0 million 1-Day and 1-Month premiums of 30.3% and 28.0% utilized; and

    h. The inputs, metrics, and assumptions used to determine the Stock-for-stock and also below $100.0 million 1-Day and 1-Month premiums of 7.4% and 14.7% utilized.

51. With regard to the *Zeo Publicly Traded Company Analysis*, the Registration Statement fails to disclose material line items, including the following:

    a. The specific publicly traded companies analyzed;

      b.   The enterprise value ("EV") for each of the publicly traded companies analyzed;

      c.   The 2026 EV/ EBITDA multiples range utilized; and

      d.   The inputs, metrics, and assumptions used to determine the 2026 EV/ EBITDA Multiple applied to each selected company.

52.   With regard to the *Zeo Discounted Cash Flow Analysis*, the Registration Statement fails to disclose material line items, including the following:

      a.   Zeo's terminal value utilized;

      b.   The inputs, metrics, and assumptions used to determine the terminal value multiples range of 6.0x to 8.0x utilized;

      c.   The inputs, metrics, and assumptions used to determine the discount rates ranging from 13.0% to 17.0% utilized; and

      d.   Zeo's weighted average cost of capital utilized.

53.   The Registration Statement fails to provide any and all analyses done by Zeo's financial advisor, if any were produced.

54.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

55.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Heliogen stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

56. Plaintiff repeats all previous allegations as if set forth in full herein.

57. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

58. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

59. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

60. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

61. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

62. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

63. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

64. Plaintiff repeats all previous allegations as if set forth in full herein.

65. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

66. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The

Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

67. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Heliogen's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

68. The Individual Defendants acted as controlling persons of Heliogen within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Heliogen to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Heliogen and all of its employees. As alleged above, Heliogen is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 10, 2025    **BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Blvd., Ste. 300
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*